

**Bell Law Group, PLLC**
116 Jackson Avenue
Syosset, New York 11791
T (516) 280-3008
F (516) 706-4692
BellLG.com

May 19, 2023

<u>Via ECF</u>
Judge John G. Koeltl, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   <u>Lopez and Arias, et. al. v. TMS Management, et. al.</u>
      SDNY Docket No.: 22-cv-10714 (JGK)

Dear Judge Koeltl:

*The Court finds the Terms of the Settlement, including the attorney's fees and costs listed in this letter, to be fair, reasonable, and adequate. The parties should effectuate the settlement and file a Stipulation of dismissal. So ordered.*

*John G. Koeltl*
*U.S.D.J.*
*5/22/23*

We represent Plaintiffs Ramon Arias and Gelson Alcantara Lopez (collectively, "Plaintiffs") in this employment matter against Defendants TMS Management, T-Stone Corp., Sacchetti Realty, Vito Sacchetti, and Michael Sacchetti (collectively, "Defendants"). With the consent of defense counsel, Plaintiffs now respectfully seek court approval of the parties' settlement, which provides for a total payment of $112,500.00 to Plaintiffs (inclusive of attorneys' fees), in accordance with <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015). The parties' finalized settlement agreement, which was previously submitted (Dkt. No. 29-100), is submitted herein as Exhibit A.

Procedural History

Plaintiffs brought this action against Defendants on December 20, 2022, alleging wage and hour violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), amongst other claims. (Dkt. 1). Defendants submitted an answer, denying all allegations. The parties engaged in early paper discovery.

On March 29, 2023, the parties participated in an all-day mediation session with the mediator Rachel Nicotra, Esq. of Nicotra Law, PLLC, and, with her assistance, reached a settlement in principle and executed a term sheet. (Dkt. 40). Thereafter, the parties negotiated the terms of a full written agreement, which is now finalized and submitted here as Exhibit A.

Litigating this case took longer than expected, due to the fact that Plaintiffs are Spanish speakers, and translation was needed at every stage of the proceedings.

**I.   Claims and Defenses**

Plaintiffs alleged in their Complaint that they regularly worked long hours for Defendants and were not properly paid minimum wage and overtime, as required under the FLSA, 29 U.S.C.

Case 1:22-cv-10714-JGK   Document 35   Filed 05/22/23   Page 2 of 6
Case 1:22-cv-10714-JGK   Document 34   Filed 05/19/23   Page 2 of 6

The Honorable John G. Koeltl, U.S.D.J.
May 19, 2023
Page 2 of 6

§§ 206, 207. Plaintiffs also alleged violations of the New York Labor Law, including failure to pay minimum, overtime, and spread of hours pay, and hiring notice and wage statement violations.

### *Plaintiff Gelson Lopez*

Plaintiff Lopez worked for Defendants as a superintendent and handyman from approximately November 2017 through approximately April 2021. Plaintiff Lopez's job responsibilities included cleaning the common areas of buildings, garbage removal, basic plumbing and electrical work, responding to tenant complaints, general handyman duties, and heavy-duty cleaning and renovation of vacant apartments (including junk removal, removal of appliances, plaster, sheetrock, and painting).

Plaintiff Lopez's regularly scheduled work hours were from 7 a.m. through 7 p.m., seven (7) days per week. In addition, he was required to be on call twenty-four (24) hours per day, seven (7) days per week to handle after-hours emergency calls from tenants. He estimates that he spent an average of eight (8) additional hours per week actively performing work outside of his regular working hours.

Plaintiff Lopez cleaned and maintained five (5) buildings for Defendants, including four buildings in which he did not reside. Throughout his employment, Plaintiff Lopez was paid a flat weekly rate regardless of how many hours he worked, with no overtime premium for hours worked over forty (40) per week. Plaintiff Lopez's weekly rate was Five Hundred Dollars ($500.00) per week from November 2017 through some point in 2019, when it was increased to Six Hundred Dollars ($600.00) per week.

Moreover, Plaintiff Lopez was not provided with an accurate wage notice upon hire or accurate wage statements on each pay day. In sum, Plaintiff Lopez alleged damages in the sum of $99,460.00.

### *Plaintiff Ramon Arias*

Plaintiff Arias worked for Defendants as a superintendent assistant and then as a superintendent from approximately 1999 through June of 2022, when he was unlawfully terminated in retaliation for complaining about Defendants' unlawful wage practices.

Plaintiff Arias' regularly scheduled work hours were from 7:00 a.m. through 6:00 p.m., seven (7) days per week. In addition, he was required to be on call twenty-four (24) hours per day, seven (7) days per week to handle after-hours emergency calls from tenants. He estimates that he spent an average of eight (8) additional hours per week actively performing work outside of his regular working hours. Throughout his employment, Plaintiff Arias was paid a flat weekly rate of Four Hundred Dollars ($400.00), regardless of how many hours he worked, with no overtime premium for hours worked over forty (40) per week.

Moreover, Plaintiff Arias was not provided with an accurate wage notice upon hire or accurate wage statements on each pay day. In sum, Plaintiff Arias alleged damages in the sum of $134,740.00

The Honorable John G. Koeltl, U.S.D.J.
May 19, 2023
Page 3 of 6

*Defendants' Position*

Defendants denied Plaintiffs' claims and asserted multiple defenses. *First,* Defendants claimed that the janitorial exemption applied and barred Plaintiffs' claims under New York State Law. *Second,* Defendants claimed that their records would show that Plaintiffs did not work in five (5) buildings, as they allege. *Third,* Defendants asserted that their records would show that Plaintiffs did not work the long hours they claimed to have worked. *Lastly,* Defendants claimed that there is no viable collective action or Rule 23 class on these facts.

## II. Settlement Terms

The $112,500.00 settlement ("Settlement Sum") will be distributed as follows:

- Plaintiff Lopez: $31,000
- Plaintiff Arias: $44,000.
- Bell Law Group, PLLC: $37,500 representing litigations costs and fees.

## III. The Settlement is Fair and Reasonable under the Cheeks Factors

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Kochilas v. Nat'l Merch. Servs., Inc., 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id. (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Wolinsky factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. Here, all of the factors support approving the parties' settlement. Id.

*First,* the total settlement amount of $112,500 is reasonable in light of Plaintiffs' potential range of recovery at trial. If Plaintiffs were successful in proving their hours and pay as alleged in the Complaint, they are claiming $200,000 in owed wages under the FLSA and NYLL, inclusive of liquidated damages. However, if Defendants were successful in asserting that Plaintiffs did *not* work the number of work hours they claimed, and Defendants were successful in asserting that the janitorial exemption applied, than Plaintiffs' recovery would be considerably less. Indeed, Defendants continue to assert that Plaintiffs are entitled to no recovery whatsoever. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $200,00.00.

The Honorable John G. Koeltl, U.S.D.J.
May 19, 2023
Page 4 of 6

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiffs will receive a combined total of $75,000 which is 37.5% of their maximum recovery. The outcome here is, therefore, a highly reasonable one under the FLSA. See, e.g., Gervacio v. ARJ Laundry Servs. Inc., 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); Villanueva v. 179 Third Avenue Rest Inc., 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

*Second*, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiffs avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend a deposition and trial. Plaintiffs also avoid the stress, uncertainty, and delay that would be inherent in completing discovery and engaging in motion practice. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." Flores v. Mama Lombardi's of Holbrook, Inc., 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks expected to immediately rise for all parties, the Settlement Sum is especially fair and reasonable.

*Third*, from Plaintiffs' perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant factual disputes in the case, particularly around the credibility of each party's position, and Defendants' ability to avail themselves to the janitorial exemption. If the case were to continue, and Defendants were successful in demonstrating that the janitorial exemption applied, Plaintiffs would risk losing their State Law claims entirely. In contrast through settlement, both parties have control over their recovery and financial exposure and avoid accruing additional attorneys' fees for an uncertain result. Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites their receipt of funds, provides closure, and minimizes the disruption to their life caused by the requisite active participation of prosecuting his case.

As to the fourth and fifth Cheeks factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. Significantly, the parties were assisted in reaching the settlement by neutral mediator Rachel Nicotra, Esq. The assistance of an experienced employment law mediator reinforces that a settlement agreement is non-collusive. See, e.g., Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."); Capsolas v. Pasta Res. Inc., 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) (same). There was no fraud or collusion here.

## IV. The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in Cheeks that contravene FLSA's remedial purposes. Snead v. Interim Healthcare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). Plaintiffs' release of claims is narrowly tailored, and Defendants have also agreed to release claims against Plaintiff. The parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not

The Honorable John G. Koeltl, U.S.D.J.
May 19, 2023
Page 5 of 6

constitute disparagement. These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

### V. Plaintiff's Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel;(2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Under the settlement agreement, Plaintiff's counsel would receive a fee award of $37,500 which equals one-third of the $112,500 settlement, and which is also inclusive of costs in the sum of $612.00. This amount is consistent with approved fee awards in this Circuit, thereby demonstrating its reasonableness. See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust, 925 F.3d 63, 71 (2d Cir. 2019) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); see also Kornell v. Haverhill Ret. Sys., 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum – not one-third the net settlement sum after deduction of attorneys' fees – and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); Petersonv. Lab. Corp. of Am. Holdings, No. 1:20-cv-1056 (MAD/TWD), 2021 U.S. Dist. LEXIS 241010, at *8 (N.D.N.Y. Dec. 17, 2021) (holding 33 1/3% in attorney's fees are reasonable on Cheeks review); Li v. Ichiban Mei Rong Li, Inc., No. 1:16-CV-0863 (DEP), 2017 U.S. Dist. LEXIS 68060, at *4 (N.D.N.Y. May 4, 2017) (holding on Cheeks review that an attorneys' fee award equal to one-third of the total settlement amount minus costs is reasonable); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." See Fresno County Employees' Retirement Assoc., 925 F.3d at 72 (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, over the course of the litigation, four attorneys worked on the case – two associates (Laura Reznick and Frank Tantone) and two partners (Andrea Batres and Chaya Gourarie), who billed for approximately 60 hours in total.[1] See Ex. B. Frank Tantone billed at the rate of 400.00 per hour, Laura Reznick, a senior associate, billed at the rate of $450.00, and the two partners

---

[1] The undersigned recently joined the Bell Law Group, and had to spend several hours familiarizing herself with the facts and circumstances of the case, for purposes of completing the within submission.

The Honorable John G. Koeltl, U.S.D.J.
May 19, 2023
Page 6 of 6

billed at the rate of $500.00 per hour. These hourly rates are deemed reasonable in this District. See, e.g., Campos, et al. v. BKUK 3 Corp., No. 18 Civ. 4036, 2021 U.S. Dist. LEXIS 151528, 2021 WL 3540243, at *11 (S.D.N.Y. Aug. 10, 2021) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases). See also Leon v. Gazivoda Realty Co., 2019 U.S. Dist. LEXIS 160059, at *6 (S.D.N.Y. Sep. 16, 2019) (approving the rate of $400.00 per hour for the undersigned when she was a senior litigation associate in 2019).

Additionally, a paralegal, Priscilla Sandoval, billed for approximately 2 hours, at the rate of $150.00 per hour, which courts have deemed to be reasonable. See e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) ("As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable.").

In sum, based on the above time and hourly rates, Plaintiff's counsel's lodestar is $24,362.00, which amounts to a multiplier of 1.5. Accordingly, attorneys' fees of $37,500 are within the range of attorneys' fees that courts in this Circuit have deemed reasonable. See Tosic v. Pinnacle Grp. N.Y. LLC, 2021 U.S. Dist. LEXIS 152137, at *5 (S.D.N.Y. Aug. 12, 2021) (awarding a lodestar multiplier of 3.30); Pinzon v. Johnny Food Corp., No. 18 Cir. 105, 2018 WL 3271737, at *3 (S.D.N.Y. May 24, 2018) (awarding a lodestar multiplier of 5.23 but characterizing it as "on the high end of those generally awarded in this Circuit"); Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

For the reasons stated above, Plaintiffs respectfully request that the Court approve the settlement agreement in this case.

We thank the Court for its attention to this matter.

Respectfully submitted,

Chaya M. Gourarie